No. 23-5273

# United States Court of Appeals for the District of Columbia Circuit

---

MATTHEW J. HIGHT,

*Plaintiff-Appellant*,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, ET AL.,

*Defendants-Appellees*,

and

ST. LAWRENCE SEAWAY PILOTS ASSOCIATION,

*Intervenor for Defendants-Appellees.*

---

On Appeal from the
United States District Court for the District of Columbia
(No. 1:21-cv-3277-RJL)

---

## BRIEF OF ST. LAWRENCE SEAWAY PILOTS ASSOCIATION

---

JOHN LONGSTRETH
MARK H. RUGE
TRE A. HOLLOWAY
K&L GATES LLP
1601 K STREET, NW
Washington, DC 20006-1600
202-778-9000
john.longstreth@klgates.com
mark.ruge@klgates.com
tre.holloway@klgates.com

*Counsel for St. Lawrence Seaway Pilots Association*

## CERTIFICATE AS TO PARTIES,
## RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), counsel for Defendant-Intervenor-Cross-Appellee certify as follows:

**A. Parties, Intervenors, and Amici Curiae.**

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief of Appellant.

**B. Rulings Under Review**

References to the ruling at issue appear in the Brief of Appellant.

**C. Related Cases**

This case is related to a prior case decided by the United States District Court for the District of Columbia.  *See Hight v. U.S. Dep't of Homeland Sec.*, No. 19-cv-02094, 533 F. Supp. 3d 21 (D.D.C. 2021) (Mehta, J.).  That case was not appealed. Counsel is unaware of any other pending related cases in this court or any other court.

## TABLE OF CONTENTS

INTRODUCTION ........................................................................1

JURISDICTIONAL STATEMENT ...........................................6

STATEMENT OF ISSUES ........................................................6

STATEMENT OF THE CASE ....................................................7

    A.    The Pilotage Regulatory System..............................7

    B.    Hight's History and Apprenticeship .........................7

    C.    Hight's Initial Coast Guard Appeal ........................10

    D.    *Hight I* ..................................................................11

    E.    The Remand Proceedings .......................................13

    F.    Hight's Second Appeal to the District Court ...........16

SUMMARY OF ARGUMENT ..................................................18

ARGUMENT ...........................................................................19

  I.    The Coast Guard's Determination Was Neither Arbitrary Nor Capricious; It Presented A Prudent Exercise Of Discretion Focused On Ensuring Pilotage Safety. .........................................20

    A.    The Coast Guard adequately justified its conclusion that Hight failed to complete his training.................................21

    B.    Hight's disqualification was based on legitimate safety concerns raised during the Coast Guard's review and there is no credible evidence of record that it was motivated by personal animus.......................................................23

  II.    The Coast Guard Did Not Improperly Delegate Its Authority. .........25

  III.    Hight's First Amendment Challenge Is Also Meritless. ...................31

  IV.    Amicis' Rehash Of Hight's Constitutional Claims Is Based On Pervasive Misunderstanding Of The Pilotage System......................34

CONCLUSION .......................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostini v. Felton*,
521 U.S. 203 (1997)............................................................34

*Am. Great Lakes Ports Ass'n v. Schultz*,
962 F.3d 510 (D.C. Cir. 2020)....................................24, 36

*Ass'n of Am. Railroads v. U.S. Dep't of Transp.*,
821 F.3d 19 (D.C. Cir. 2016)...........................................27

*Carter v. Carter Coal Co.*,
298 U.S. 238 (1936)....................................................25, 29, 30

*Consumers' Research v. Fed. Commc'ns Comm'n*,
88 F.4th 917 (11th Cir. 2023) .........................................27

*Currin v. Wallace*,
306 U.S. 1 (1939)..............................................................30

*Dellums v. United States N.R.C.*,
863 F.2d 968 (D.C. Cir. 1988).........................................33

*Dooling v. Overholser*,
243 F.2d 825 (D.C. Cir. 1957).........................................32

*In the Matter of Energetic Tank, Inc.*,
2022 WL 2159786 (S.D.N.Y. June 15, 2022) ...................14

*File v. Martin*,
33 F.4th 385 (7th Cir. 2022) .............................................3

*Fontem US v. United States Food & Drug Admin.*,
82 F.4th 1207 (D.C. Cir. 2023).........................................19

*Hight v. DHS ("Hight I")*,
533 F. Supp. 3d 21 (D.D.C. 2021)............................2, 11, 17

*Janus v. AFSCME*,
138 S. Ct. 2448 (2018)..........................................32, 33, 34

*Jarchow v. State Bar of Wisconsin*,
 2019 WL 6728258 (W.D. Wis. Dec.11, 2019), *aff'd mem.*, No. 19-
 3444 (7th Cir. Dec. 19, 2019) ...................................................................4

*Keller v. State Bar of California*,
 496 U.S. 1 (1990)...................................................................3–4, 31–33

*Kotch v. Bd. of River Port Pilot Comm'rs for Port of New Orleans*,
 330 U.S. 552 (1947)...................................................4, 28–30, 33, 39

*LaShawn A. v. Barry*,
 87 F.3d 1389 (D.C. Cir. 1996)................................................................33

*The Lottawanna*,
 88 U.S. 558 (1874)...................................................................................37

*Maxwell v. Snow*,
 409 F.3d 354 (D.C. Cir. 2005)................................................................34

*McDonald v. Longley*,
 4 F.4th 229 (5th Cir. 2021) ......................................................................3

*Menkes v. St. Lawrence Seaway Pilots' Ass'n*,
 269 F. App'x 54 (2d Cir. 2008) ................................................6, 31, 35

*Menkes v. U.S. Dep't of Homeland Sec.*,
 637 F.3d 319 (D.C. Cir. 2011)...................................... 3-4, 31–34

*Motor Vehicle Mfrs. Ass'n. of the United States, Inc. v. State Farm
Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983)...................................................................................21

*N.C. State Bd. of Dental Exam'rs v. FTC*,
 574 U.S. 494 (2015)................................................................................36

*Potter v. New Jersey Supreme Ct.*,
 403 F. Supp. 1036 (D.N.J. 1975)....................................................28, 29

*Rodriguez de Quijas v. Shearson/Amer. Express, Inc.*,
 490 U.S. 477 (1989)................................................................................34

*S. Pac. Transp. Co v. Watt*,
 700 F.2d 550 (9th Cir. 1983) .................................................................26

*Schell v. Chief Justice & Justices of Oklahoma Supreme Court*,
11 F.4th 1178 (10th Cir. 2021) ............................................................4

*Sunshine Anthracite Coal Co.*, 310 U.S. 381 (1940)................................29

*Tabor v. Joint Bd. for Enrollment of Actuaries*,
566 F.2d 705 (D.C. Cir. 1977)..........................................................27

*Taylor v. Buchanan*,
4 F.4th 406, 409 (6th Cir. 2021) .......................................................4

*United States v. Rock Royal Co-op.*,
307 U.S. 533 (1939)...........................................................................30

*United States v. Title Ins. Trust Co.*,
265 U.S. 472 (1924)...........................................................................32

*Woods v. Interstate Realty Co.*,
337 U.S. 535 (1949)...........................................................................32

**Statutes**

5 U.S.C. § 706...........................................................................................21

46 U.S.C. § 9304(a) ...........................................................................7, 8, 26

46 U.S.C. § 9304(b) ...................................................................................7

46 U.S.C. § 9305 .....................................................................................37

46 U.S.C § 9307(b)(2)..............................................................................26

**Other Authorities**

46 C.F.R. § 401.210 .................................................................................21

46 C.F.R. § 401.211(c)..............................................................................27

46 C.F.R. § 401.220 ............................................................................21, 35

46 C.F.R. § 401.220(b) .............................................................................20

46 C.F.R. § 401.220(b)(1).........................................................................11

46 C.F.R. § 401.220(c)..............................................................................21

46 C.F.R. § 401.405 ................................................................................35

## INTRODUCTION

Picture a massive vessel, laden with cargo, skillfully threading through the narrow channels of a bustling port.  The challenges of navigating congested waterways, hidden hazards, and unpredictable tides require not only specialized knowledge, but also a calm temperament and a steady hand to maintain control and ensure safety.  The journey to becoming a registered pilot involves extensive training, rigorous testing, and strict adherence to regulatory standards and professional conduct.  While technical acumen is crucial, the temperament of a pilot is also crucial.  The ability to remain calm, use good judgment, and maintain composure in stressful situations is necessary for the safety of piloting operations.  Conversely, a pilot who becomes irritable, raises their voice, or behaves aggressively can compromise the safety of the vessel.  In the high-pressure setting of maritime navigation, such behavior can impede clear communication and cause errors, putting both the ship and its crew at risk.

Plaintiff-Appellant Captain Matthew Hight's quest to become a registered pilot has been long and unsuccessful, marked by a well-documented pattern of lapses in judgment and a failure to complete required training.  Hight applied to Defendant-Appellee the St. Lawrence Seaway Pilots Association ("Association") for a position as an apprentice pilot after a prior career as a master on an ocean-going vessel that he misrepresented to the Association as "unblemished."  Based on several incidents

during his training period, the Association decided against admitting Captain Hight into its ranks, and recommended that the United States Coast Guard (also a Defendant-Appellee) not accept him for registration.

The Coast Guard reviewed the matter carefully and determined under its regulatory authority over the safety and economic efficiency of pilotage that Hight should not be registered as a Great Lakes pilot. Exercising its own independent judgment, and considering the Association's recommendation as one factor among many, the Coast Guard issued a well-reasoned decision highlighting the safety risks posed by Hight's actions, deeming him ineligible for registration. JA-269–75. The agency rejected Hight's attempts to minimize his actions, and decided that his accounts were not credible. The Coast Guard also found that Hight had not properly completed the required training program in any event, and Hight simply mispresents an earlier district court decision that expressly left this matter open for the agency's consideration. *See* pp. 11–12, *infra* (citing *Hight v. DHS ("Hight I")*, 533 F. Supp. 3d 21, 31 & n.4 (D.D.C. 2021) (court "expresses no view on whether, if [Hight] passes the pilotage examination, [Hight] otherwise qualifies as a registered pilot for District One," and acknowledges that the Coast Guard could determine on remand that certain trips, no matter when they occurred, did not qualify because no evaluation of Hight occurred). The Coast Guard's decision lies within the heart of its safety expertise and was both reasonable and reasonably explained, requiring that

Hight's petition for review be dismissed. Hight attempts to transform a routine administrative decision into a constitutional battleground, raising challenges based on the due process strand of the nondelegation doctrine and the First Amendment. Both attempts fail.

First, the Coast Guard did not delegate its registration decision to the Association. To the contrary, it reviewed the matter and determined that the Association's admission of a pilot other than Hight would not adversely affect the pilotage system and that registering Hight would, in fact, pose a safety risk. *See* JA-87, 155, 272–74. There is not a shred of evidence in the record that safe and effective pilotage required that Hight, as opposed to some other pilot, be registered, and the evidence was to the contrary.

Hight's First Amendment and due process challenges are squarely foreclosed by this Court's decision in *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319 (D.C. Cir. 2011). Hight's assertion that *Menkes* has been implicitly overruled by intervening precedent is entirely incorrect, as the Supreme Court has repeatedly refused to reconsider the primary precedent on which *Menkes* relied.[1] As *Menkes*

---

[1]    *Menkes* relied primarily on *Keller v. State Bar of California*, 496 U.S. 1 (1990), and the Supreme Court has rejected at least four petitions seeking review of court of appeals decisions that *Keller* has not been implicitly overruled by the authority on which Hight relies. *See File v. Martin*, 33 F.4th 385, 392 (7th Cir. 2022) ("[W]e have already declined an invitation to find that *Janus* implicitly overruled *Keller* . . ."), *cert. denied sub nom. File v. Hickey*, 143 S. Ct. 745 (Mem) (2023); *McDonald v. Longley*, 4 F.4th 229, 246, 253 (5th Cir. 2021) (noting that compelled membership

noted, for decades "persons wanting to join a pilots' association apply to become a member and the pilots' association admits those it chooses to accept and who can meet the requirements to become a registered, licensed, and qualified pilot." 637 F.3d at 327. *Accord, Kotch v. Bd. of River Port Pilot Comm'rs for Port of New Orleans*, 330 U.S. 552, 553–54, 563–64 (1947) (upholding Louisiana's requirement that the governor could appoint a pilot only if the applicant both possessed all the statutory qualifications and served a six-month apprenticeship under Louisiana officer pilots, despite allegations of nepotism in the apprenticeship process).

With nowhere else to turn, Hight spends most of his argument attacking the Coast Guard's conclusions about his temperament and fitness, even though those findings are well supported by the record. He admits to cursing at an Association client but insists he was in the right. He acknowledges failing to report vessel damage but asserts he was unaware of it, despite his failure to report it once he unmistakably became aware. He misrepresented himself as "retired" from a Naval

---

in a bar association that is engaged in only "germane activities" survives exacting scrutiny); *Taylor v. Buchanan*, 4 F.4th 406, 409 (6th Cir. 2021) ("*Keller* continue[s] to bind the lower courts despite the Court's ruling in *Janus*."), *cert. denied sub nom. Taylor v. Heath*, 142 S. Ct. 1441 (2022); *Schell v. Chief Justice & Justices of Oklahoma Supreme Court*, 11 F.4th 1178 (10th Cir. 2021) ("*Keller* remains binding . . ."), *cert denied sub nom. Schell v. Darby*, 142 S. Ct. 1440 (2022); *Jarchow v. State Bar of Wisconsin,* 2019 WL 6728258 (W.D. Wis. Dec.11, 2019), *aff'd mem.*, No. 19-3444 (7th Cir. Dec. 19, 2019), *cert denied*, 140 S. Ct. 1720 (2020) ("*Keller* still binds this court . . .").

Reserve position despite separating from the Reserve long before retirement eligibility and never actually serving.  He was also relieved of his command of an oceangoing vessel due to a dispute with the vessel owner.  The record, even under Hight's recounting of events, repeatedly shows Hight's tendency to attract trouble and controversy, then deflect blame or downplay the severity of his actions.  This pattern was so evident that the Coast Guard's Pilotage Director would have denied his registration even if the Association had been inclined to recommend him.  JA-87.

Finally, Hight resurrects scurrilous allegations he made off and on to the district court as to supposed wrongdoing by the Association's President, suggesting the Association was somehow acting in cahoots with the Pilotage Office to combat whistleblowing allegations that Hight made only after he was not accepted for membership in the Association or recommended for registration.  These allegations are squarely addressed in the record and are further evidence of Hight's habit of blaming others for his own situation.[2]  They are also (like Hight's supporting amicus

---

[2]  There is no evidence of record that Hight complained to any relevant authority during the time he was seeking to join the Association, and the Government Accountability Office has found that the current transparent system of pilotage regulation ensures oversight, transparency, and accountability between and among the Coast Guard and all industry stakeholders as to rate setting and all other aspects of the regulation and management of Great Lakes pilotage.  *See* U.S. Gov't Accountability Off., GAO-19-493, Coast Guard: Stakeholders' Views on Issues and Options for Managing the Great Lakes Pilotage Program, at 11–12. (2019)

brief that misunderstands the pilotage system in every relevant particular), based on the entirely incorrect notion that incumbent pilots have a competitive interest in excluding Hight or any other pilot. The Coast Guard regulates the number of pilots, pilotage rates, and services, which remain unaffected by Hight's registration or admission to the pilot pool. That is why Menkes, a disaffected pilot who sued the Association nearly two decades ago, had his far-fetched antitrust suit against the Association dismissed. *See Menkes v. St. Lawrence Seaway Pilots' Ass'n*, 269 F. App'x 54, 55 (2d Cir. 2008) (affirming dismissal because there was no antitrust injury—i.e., no harm to competition—resulting from Menkes' alleged exclusion from a market regulated as to price and entry). Hight's suit is no less far-fetched.

Hight's petition for review is entirely without merit and should be dismissed.

## JURISDICTIONAL STATEMENT

The Association adopts the jurisdictional statement of Defendants-Appellees.

## STATEMENT OF ISSUES

The Association adopts the statement of issues of Defendants-Appellees.

## STATEMENT OF THE CASE

### A. The Pilotage Regulatory System

Under the Great Lakes Pilotage Act of 1960, now codified at 46 U.S.C. §§ 9301-08, the Secretary of Homeland Security (acting through the Coast Guard) is authorized to oversee the formation of pilotage pools, which are voluntary associations of U.S. registered pilots. 46 U.S.C. § 9304(a). These pools are responsible for "efficient dispatching of vessels and rendering of pilotage services." *Id.* The Secretary also has broad authority to regulate pilotage pools, including limiting their number, setting operational regulations, auditing, and promoting coordination with Canadian counterparts. *Id.* § 9304(b). Congress explicitly designated private, independent associations of U.S. registered pilots to provide Great Lakes pilotage. *Id.* § 9304(a).

### B. Hight's History and Apprenticeship

Hight began his apprenticeship with the Association in 2015. JA-130. Falsely representing that he had an unblemished record for twenty-four years as Merchant Marine Officer, Hight neglected to disclose a major career setback in his application: his March 2012 reassignment from large vessels to much smaller ones, a result of being removed from his prior command. JA-69. Despite early positive feedback, his application faltered when the Association discovered his involvement in two serious incidents. JA-85–86.

In the first incident, Hight was serving as the pilot onboard the M/V Fearless sailing from Oshawa, Ontario to Port Weller, Ontario. JA-153. A tug, the Omni Richelieu, was assigned to assist in the undocking of the M/V Fearless. JA-153. Under Hight's watch, the tug struck a channel buoy, suffering a severe casualty that knocked it out of commission for the rest of the season. JA-153. Hight failed to report the incident to the appropriate officials. JA-153.

In the second incident, Hight was the pilot onboard the M/V Federal Hunter traveling from Port Weller Anchorage, Ontario to Hamilton Pier 10, Ontario. JA-153. Discussions regarding berthing options in Hamilton erupted into Hight shouting at the M/V Federal Hunter's Master at the entrance to Hamilton Harbor. JA-153. Hight angrily blamed the Master's necessary communications for his own inability to hear crew responses and then unleashed a profanity-filled verbal assault on the Master on the bridge following the vessel's docking. *Id*. The Master himself complained to the Pilotage Office, noting the assault on his dignity. JA-173.

Hight's opening brief admits that these incidents occurred, but attempts to downplay both incidents and shift away responsibility. With regard to the tugboat incident, he implies that fault lay with the tugboat operator, ignoring his duty to report any navigational incidents or hazards that occurred in connection to his vessel, regardless of direct involvement. App. Br. at 13. With regard to the verbal exchange, Hight brushes off the heated confrontation with the master, flippantly admitting to

using "a few 'F-bombs.'" *Id.* at 14. He tries to justify his behavior by blaming the master's communications for distracting him during the docking procedure. *Id.*

These incidents led the Association, with the concurrence of the Director of Pilotage, to withhold its recommendation for his full registration. JA-153–54. In a letter to the Director of Pilotage, the Association's President noted that the incidents exposed a troubling pattern of behavior on Hight's part. He had clashed with the Pilots Association's dispatchers, making unreasonable demands regarding ships and assignments. JA-153–54. In addition, a prior incident with Canadian Customs made him a target for frequent secondary inspections, causing delays that disrupted the passage of the vessels he was piloting. JA-153–54.

As a result of these issues, the Pilots Association's Training Committee decided against recommending Captain Hight for continued training as a Temporarily Registered Pilot and Applicant Pilot in Training on all District 1 waters for the 2018 season. JA-154. The Coast Guard's Director of Great Lakes Pilotage, Todd Haviland, concurred with the recommendation and stated a formal letter would follow. JA-155.

In a June 27, 2018, letter, the Association, through its counsel, provided the Coast Guard with further context regarding Hight's time as an apprentice pilot. JA-216–25. This letter emphasized Hight's repeated safety violations, including "regularly" exceeding Canadian speed limits and navigating in near-zero visibility

9

near Burlington Piers.   It further noted that Hight's combative nature, poor interpersonal skills, and tendency to create a hostile environment compromised his ability to manage a bridge team effectively.  JA-216–25.  The Association concluded that, "in the interest of vessel safety," it could not support Hight's registration as a pilot.  *Id.*

On July 18, 2018, the Coast Guard denied Hight's request to take the Great Lakes Pilotage written examination and receive a five-year registration, allowing for an appeal process.  Hight appealed, and on October 19, 2018, the Coast Guard upheld its decision.  JA-128.  The Coast Guard affirmed on two grounds: (i) Hight's documentation did not reflect the minimum number of required trips, and (ii) the Pilots Association had not recommended Hight for full registration.  JA-128; JA-153–54.

Hight initially submitted a long response to the Association conceding various shortcomings, JA-99–103, but has since chosen to make entirely unsupported allegations of supposed misconduct by the Director and the Association and suggest that these actions, and not his own conduct, led to his not being recommended.  *See, e.g.*, App. Br. at 10–12.

### C.  Hight's Initial Coast Guard Appeal

Hight took an appeal, offering voluminous argumentation, to the Coast Guard's Chief of the Office of Waterways and Ocean Policy, who considered the

matter and issued a written decision finding no merit to Hight's position.    In particular, he found no evidence whatsoever supporting Hight 's claims of alleged misconduct by the Director of Pilotage.  JA-128–29.  Hight took a further appeal, again providing voluminous argumentation, which the Coast Guard's Director of Marine Transportation Systems denied in a further written decision.  JA-269–75. The agency concluded that the Hight had not complied with the regulation's minimum trips requirement.  JA-269–72.  The agency also advised the Hight that it saw no basis related to its duty to assure safe, efficient, and reliable pilotage not to accept the Association's recommendation that he not be made a fully registered pilot. *See* JA-189, 227.

### D. *Hight I*

After the Coast Guard denied his appeals, Hight sought judicial review of the agency's decision, and the case was assigned to Judge Mehta.  He held that the Coast Guard's interpretation of the minimum trips requirement in 46 C.F.R. § 401.220(b)(1) was not in accordance with the text of the regulation, in that a trip undertaken prior to Captain Hight becoming an Applicant Pilot should be considered as long as it was undertaken within a year of his application.  He directed the Coast Guard to administer the pilotage exam to Capt. Hight, on the basis that the federal defendants had failed to adequately respond to the argument that he should not be permitted to do so if they lost on that issue.  *Hight I*, 533 F. Supp. 3d at  32.

Having ruled for Hight on this narrow rationale, the district court did not reach any of his remaining claims, or rule as to any other matter. *Id.* at 31. The court noted that "Plaintiff's constitutional claims, the remaining [Administrative Procedure Act (APA)] claim—which challenges the alleged requirement of membership in the Association to work as a registered pilot—only becomes ripe if Plaintiff passes the pilotage examination and otherwise qualifies as a registered pilot." *Id.* at 31 n.3. The court also expressed no view as to whether, even apart from a recommendation from the Association, the Coast Guard could make an independent determination as to whether the interest of safety and efficiency of pilotage on the waters of Great Lakes Pilotage District 1 would be served by placing Capt. Hight on the tour de role of pilots eligible to provide service on the Great Lakes. The court noted that was part of the issue as to "whether, if Plaintiff passes the pilotage examination, Plaintiff otherwise qualifies as a registered pilot for District One," which the court expressly reserved. *Id.* at 31. Finally, as to the training issue itself, the district court took "no position on whether it would be appropriate for the Coast Guard to consider . . . in the future" whether certain trips taken by Hight "might not qualify toward the Minimum Trips Requirement because they '[did] not show the necessary evaluation required by [the Association's] training plan.'" *Id.* at 31 n.4.

### E.  The Remand Proceedings

On remand from the district court, the Coast Guard further considered the matter, including addressing the issues the court had reserved.  On December 15, 2021, the Director of Pilotage again denied Hight's request for registration.  JA-85–87.  The Director cited four grounds for the denial. First, he stated that he would not approve Capt. Hight's full registration because he had not "complete[ed] the [SLSPA] training program" and would not do so until Captain Hight "clearly demonstrated proficiency in piloting foreign vessels through [the] challenging [designated] waters" of District 1.  JA-85.

Second, he found that Hight had "demonstrated unprofessional conduct and a troubling lack of candor" in his interactions on the job, including the incident with a vessel master in which Hight had admitted to arguing with the master and cursing, and the incident where he did not report the tug damage.  JA-85–86.

Third, and related to the second finding, he found that Capt. Hight had misrepresented or failed to disclose various items in his background, including representing that he was retired from the U.S. Naval Reserve when in fact he had performed no reserve duties before his discharge and was not receiving a retirement pension,[3] and that he had been relieved of his command of a vessel after

---

[3] Hight's argument that this dissembling should be ignored because he was voir dired on it by a Justice Department lawyer (who also happened to be a naval reservist who had not misrepresented his status) and allowed to testify misunderstands how voir

13

disagreement with the owner despite his claim to have had an "unblemished record." JA-86–87.

Finally, he noted that the agency's regulations require a letter of recommendation from the Association, but that the Association's recommendation in Hight's case was adverse because it believed that Capt. Hight was not qualified and should not be registered. JA-87. The Director also ruled that based on the information before him indicating Hight's "lack of integrity and judgement," he "would deny your request even with a positive endorsement." *Id.*

In appealing the Director's ruling, Hight generally did not deny that the various incidents it discussed had occurred, but instead provided his own interpretation of the events to minimize them or explain them away. JA-104–22. In general, he (a) offered his own characterizations of admitted facts that included losing his temper with the vessel master, not reporting the tug incident, and having to leave his last major command of an oceangoing vessel due to a dispute with the

---

dire decisions are generally made in bench trials, and his suggestion that the court largely accepted his testimony where it was contested is untrue. *See, e.g.*, *In the Matter of Energetic Tank, Inc.*, 2022 WL 2159786, at *25 n.20 (S.D.N.Y. June 15, 2022) (finding Hight's testimony "unpersuasive"). The opinion further cites Hight's testimony, other than as to background and uncontroverted matters, only when it appears to have been adverse to his client's interest. *See id.* at *14, 16-17, 29. The Court is of course free to "read the transcript of Captain Hight's deposition" itself as he invites, App. Br. at 46, or it could just accept the common sense conclusion that it is misleading at the least to claim to be "retired" from a job from which one has been separated having performed no duties and having not come close to qualifying for retirement.

owner; (b) tried to place the blame for these matters elsewhere, or (c) asserted that his errors were unintentional and should not be held against him.  JA-108–117. Finally, Hight asserted the same meritless claims he asserts here that the Coast Guard had somehow abdicated his regulatory authority to the Association by considering its adverse recommendation in the registration process.

Searching for some reason why the Association would improperly reject him, when it has no incentive to do so in an economically regulated market, Hight's appeal claimed that the "real reason" Capt. Hight was denied registration was that "during his training period, he raised questions about the ethics and finances of the Saint Lawrence Seaway Pilots' Association."  JA-104.  There is not a single document or any other evidence in the record setting forth such questioning "during his training period," as opposed to the flurry of entirely unsubstantiated and often patently illogical charges he raised thereafter in an effort to challenge the Association's adverse recommendation and the Coast Guard's denial of his registration.  This includes entirely scurrilous charges of misconduct against the Pilotage Director that had been addressed and dismissed in the first appeal.  *See* JA-128–29.  It also includes a series of invented allegations against the Association that its President addressed in a sworn declaration submitted in the previous litigation and in the record here.  JA-73–77.

The Coast Guard's Director of Marine Transportation Systems denied Hight's appeal on June 7, 2022.  JA-269–75.  First, after a lengthy discussion of standard training practices in the Great Lakes and in pilotage commissions around the country, he concurred in the Director's decision not to fully register Hight because he had not completed the training plan prescribed by the SLSPA and he had not shown the proficiency to safely navigate vessels in the more challenging designated waters. JA-269–72.  Second, after a survey of the practices in other pilotage jurisdictions, he relied on the Association's recommendation that Hight lacked the fitness to be a pilot.  JA-272–74.  Third, after again surveying practices in other jurisdictions and literature on the subject showing that pilot temperament was an important factor in marine safety, he found based on the incidents cited in the Director's denial that Capt. Hight "demonstrated a temperament inconsistent with the professionalism necessary to reduce risk to the vessel and environment."  JA-274.  He cited the argument on the bridge in particular, as well as Hight's many aggressive emails, which as noted above contained allegations of misconduct for which Hight has offered no support and that have been directly refuted.  JA-274.

### F.  Hight's Second Appeal to the District Court

Hight appealed to the district court for a second time, again asserting violations of the APA and the Constitution.  On cross-motions for summary judgment, the district court, through Judge Leon, affirmed the Coast Guard's

decision.  JA-303.  The district court rejected Hight's argument that the decision in *Hight I* precluded the Coast Guard from denying his registration based on incomplete training, noting that the Coast Guard had relied on a ground that *Hight I* expressly left open.  JA-288–91.  After rejecting Hight's preclusion argument, the district court proceeded to address his alternative contention that the Coast Guard's decision was arbitrary and capricious under the APA as he had in fact completed the required training despite the agency's contrary determination.  However, the court found Hight's assertion unsupported by the record, as both the Coast Guard and the SLSPA consistently maintained that he had not fulfilled the training plan's requirements, and their position was well-founded and aligned with the agency's responsibility for ensuring maritime safety.  JA-292–95.

The court then turned to Hight's objections concerning the Coast Guard's reliance on the SLSPA's negative recommendation.  JA-299–301.  Hight contended that a positive recommendation was not mandated by regulation and that the Coast Guard erred in denying his registration based on the SLSPA's disapproval.  The court found it unnecessary to decide whether a positive recommendation was a condition to registration, "because Captain Hight's argument on this front is a straw man!" JA-296.  Hight did not dispute that the Coast Guard could at least *consider* such recommendations in its decision-making process.  JA-296.  The court emphasized that the Coast Guard exercised independent judgment in evaluating the SLSPA's

17

recommendation, considering it alongside other factors before denying Hight's registration. JA-297–98. Hight's delegation claim thus failed for lack of any factual support.

The district court then dealt with Hight's challenge regarding the assessment of his temperament by the Coast Guard. JA-298–301. Hight disputed the agency's view that his temperament was unsuitable for pilotage, arguing the incidents cited did not warrant such a conclusion. JA-300. However, the court found the Coast Guard's assessment supported by substantial evidence, including instances where Hight's conduct raised concerns about his suitability for the role. The court upheld the agency's decision, again stressing the deference owed to its expertise in matters of maritime safety. JA-300. This appeal followed. JA-304.

## SUMMARY OF ARGUMENT

The Coast Guard's decision to deny Appellant Hight's pilot registration, informed by the recommendation of the St. Lawrence Seaway Pilots Association, reflects a justified and prudent exercise of the agency's discretion to ensure maritime safety, based on Hight's incomplete training, documented safety concerns, and its independent review of Hight's record. The Coast Guard's review revealed critical deficiencies in Hight's qualifications and temperament, raising serious concerns incompatible with the safety-critical role of a pilot. This decision reflects the agency's lawful and principled use of its authority to maintain maritime safety.

First, the Coast Guard's finding that Hight lacked the necessary training aligns with the evidence. His training was incomplete, particularly regarding his experience navigating the St. Lawrence River.  Second, Hight's documented history of poor temperament and unprofessional conduct disqualifies him.  Hight's history of failing to report a maritime accident and exhibiting aggression towards the master of a vessel he was piloting constitute a significant safety hazard and undermine the collaborative spirit necessary for competent pilotage.

The Coast Guard did not improperly outsource its decision-making.  The Association's assessment was considered alongside other evidence.  The agency independently concluded that granting Hight registration posed a maritime safety risk, a determination the Director affirmed would have held regardless of the Association's recommendation.  Finally, Hight's constitutional arguments raising First Amendment and nondelegation challenges are without merit, both on the facts and the law.  The district court's decision should be affirmed.

## ARGUMENT

The Coast Guard's decision to deny Hight's registration rests on two independent grounds: failure to complete training and concerns about Hight's temperament.  JA-269–275. To overturn this decision, Hight must successfully challenge each of these grounds as arbitrary and capricious under the APA.  *See Fontem US v. United States Food & Drug Admin.*, 82 F.4th 1207, 1217 (D.C. Cir.

2023) (noting that, "[w]hen an agency relies on multiple grounds for its decision . . . we may nonetheless sustain the decision as long as one is valid and the agency would clearly have acted on that ground even if the other were unavailable.").

First, Hight disputes the Coast Guard's justification for denying registration due to inadequate training, arguing that the training requirements are ambiguous. App. Br. at 31–38. Second, Hight challenges the Coast Guard's assessment of his temperament, asserting that the cited incidents were pretextual and lacked proper investigation. *Id*. at 38–48. After spending the vast bulk of his brief on these issues, Hight alleges in the last pages that "[t]he Coast Guard unconstitutionally defers to the Association," and attempts to spin this into constitutional challenges under the non-delegation doctrine and the First Amendment. *Id*. at 48–55. Rather than deal with the fact that the Coast Guard merely considered the Association's input in making its own decision, Hight positions himself as the victim of some kind of conspiracy between the Association and the Coast Guard, repeatedly using intemperate and unsupported terms like "pretextual" and "rubber-stamped" to frame the Coast Guard's actions as unreasonable. *See id*., at 27, 30, 38, 42, 47, 50–51.

## I.     THE COAST GUARD'S DETERMINATION WAS NEITHER ARBITRARY NOR CAPRICIOUS; IT PRESENTED A PRUDENT EXERCISE OF DISCRETION FOCUSED ON ENSURING PILOTAGE SAFETY.

Under the APA, this Court's review of agency determinations is limited to whether the agency's action was arbitrary, capricious, an abuse of discretion or

otherwise not in accordance with law, or if it was taken without observance of procedure required by law.  5 U.S.C. §§ 706(2)(A)–(B).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  In reviewing the agency's explanation of its decision, this Court "must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quotation marks and citations omitted).

### A. The Coast Guard adequately justified its conclusion that Hight failed to complete his training.

To become a registered pilot on the Great Lakes, an individual must meet multiple requirements.  *See* 46 C.F.R. §§ 401.210, 401.220.   Notably, an individual must be "of good moral character and temperate habits," *id.* § 401.210(a)(3), must have "completed a course of instruction. . . prescribed by the association," *id.* § 401.220(b), and must have the Pilots Association provide "in writing its recommendations together with its reasons for the registration of the Applicant" for the Coast Guard's consideration, *id.* § 401.220(c).  Hight challenges the Coast Guard's determination that he failed to complete the training plan prescribed by the SLSPA and had not shown the proficiency to safely navigate vessels in the more challenging designated waters.  JA-85, JA-289.

21

Captain Hight asserts that he completed twelve round trips in designated waters of District 1 (St. Lawrence River) between August 2015 and December 2015 for which he seeks credit. JA-195. Under the SLSPA training plan and SLSPA policy, four round trips on the river are required each season in the final two years leading up to full registration are required for Deputy Pilots. JA-134, 215. Captain Hight did not meet this standard for 2017 or 2016 and therefore did not meet the standard for completing the SLSPA training plan. JA-215. Accordingly, the Coast Guard's determination is correct that Captain Hight did not satisfy the requirements of the SLSPA training program and did not demonstrate adequate proficiency in navigating the more challenging designated waters of District 1, particularly the St. Lawrence River.

Unable to seriously contest that he did not complete the required number of round trips on the St. Lawrence River, Hight pivots to arguing "inconsistent treatment," claiming other pilots received full registration despite similar training records lacking St. Lawrence River experience. However, his allegations are unsubstantiated and rely on his assertions. He acknowledges that the only records that could conceivably support his claim—records of the other pilots who supposedly received preferential treatment—"are not in the administrative record." App. Br. 34.

22

**B. Hight's disqualification was based on legitimate safety concerns raised during the Coast Guard's review and there is no credible evidence of record that it was motivated by personal animus.**

In addition to Hight's failure to complete the training program, the Coast Guard listed an independent and sufficient ground for its denial of his registration. Based on a number of incidents cited in the Director's denial decision, particularly the "bridge incident" during which Hight berated the master of a vessel he was supposed to be assisting, Hight "demonstrated a temperament inconsistent with the professionalism necessary to reduce risk to the vessel and environment."  JA-274. Both Pilotage Director Haviland and Marine Transportation Systems Director Emerson made clear that their conclusions were based on their own judgment of Hight's conduct; there is no warrant in the record for Hight 's suggestion that these decisions were some kind of "rubber stamp."   Director Haviland felt so strongly about the evidence before him indicating Hight's "lack of integrity and judgement," that he stated he would have denied the registration "even with a positive endorsement" from the Association.  JA-87.  Director Emerson cited practices in other jurisdictions and studies on the importance of pilot temperament to marine safety in coming to his conclusion.  JA-272–74.

The Coast Guard was fully justified in its determination that Hight's registration posed a potential safety risk.  Hight's misrepresentation of his past employment raises serious questions about his character and judgment.  His pattern

23

of blaming others for his own shortcomings and his failure to properly report incidents cast significant doubt on his ability to make sound and safe maritime decisions.  The Coast Guard was also perfectly entitled to rely on the well supported conclusions that the Association provided as to Hight's conduct.  *See Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 516 (D.C. Cir. 2020) (rejecting claim that the agency's reliance on public comments including pilot testimonials was not sufficient  "empirical evidence" to support its conclusion).

The Association and its members had worked with Hight for several years and concluded that he was unfit to serve.  *See* JA-67–70 (detailing a number of incidents both before and during Hight's apprenticeship and concluding that "had the Association been aware of this history when Captain Hight applied he would not have been accepted into the program," and that rather than take responsibility for and learn from his actions Capt. Hight had repeatedly hidden them or tried to blame others for them); JA-217 (reporting that a survey of its members found that Hight "has often been very combative in routine business situations, very difficult to get along with, and often lacks basic decorum and personal skills befitting of a pilot."). The purpose of an apprenticeship and training program is for an organization to get a sense of whether the applicant would operate well on a permanent basis.  The Association found that he would not, and that his temperament played a major role

24

in that finding.  The Coast Guard acted well within its discretion in considering this information.

Hight would have the Court substitute its judgment for that of the Coast Guard, the expert maritime safety agency, in evaluating this evidence.  He cites no case in which a court has purported to do so.  He also asks the Court to disregard the information and conclusions supplied to the Coast Guard by the Association, and cites no precedent for that assertion either.  The assertion is even more remarkable given the number of incidents and misrepresentations the agency cited and relied upon.  This was not a case where there was a matter or two Hight had to explain away.  Time after time he was forced to offer his own characterizations of admitted facts, to blame others for his own conduct, or assert that his errors were unintentional and should not be held against him.  *See* JA-108–17 (setting forth the detailed apologia of his counsel).

## II.    THE COAST GUARD DID NOT IMPROPERLY DELEGATE ITS AUTHORITY.

The private delegation doctrine applies to limit private parties' exercise of the substantial governmental powers of the United States.  Very few cases have raised private delegation issues, and in the more than eighty years since *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936), the Supreme Court has not invalidated another governmental action on private delegation grounds.  The very few cases in which courts have found a private delegation to be improper have involved a lack of express

25

authority for the delegation in a statute that contemplated that the agency itself should exercise the authority, a situation not present here where the Great Lakes Pilotage Act expressly designates private pilotage associations to provide pilotage.

Hight's argument fails as a legal matter because Congress "authorize[d] the formation of a pool by a voluntary association of United States registered pilots to provide for efficient dispatching of vessels and rendering of pilotage services." 46 U.S.C. § 9304(a).   Congress recognized the necessity of these associations and further required that "the President of each of the 3 Great Lakes pilotage districts [i.e., the associations], or the President's representative" serve on the Great Lakes Pilotage Advisory Committee.   *Id.* § 9307(b)(2).   Given that Congress explicitly authorized these private associations "to provide for . . . rendering of pilotage services," *id.* § 9304(a), Hight cannot demonstrate that Congress prohibited them from rendering pilotage services, including providing training and recommendations regarding pilot qualifications.   Congress has expressly authorized the Pilots Association's involvement in the rendering of pilotage services, and Hight's nondelegation argument fails on this ground alone.

Courts thus uphold private delegations where they do not violate a statutory command against delegation and there is sufficient oversight by a governmental authority. *See, e.g., S. Pac. Transp. Co v. Watt*, 700 F.2d 550, 554 (9th Cir. 1983) ("It is well settled that the power of eminent domain may be delegated by Congress to a

26

private corporation."); *Tabor v. Joint Bd. for Enrollment of Actuaries*, 566 F.2d 705, 708 n.5 (D.C. Cir. 1977) (Joint Board for Enrollment of Actuaries, exercising its broad discretion to set conditions for certifying actuaries to administer ERISA pension plans, required applicants to pass either a board exam or an exam administered by a recognized private national actuarial society; delegation was proper even without express authority to do so since Congress had not "clearly expressed its intent that no delegation by the agency was to be permitted."). *See also Consumers' Research v. Fed. Commc'ns Comm'n*, 88 F.4th 917, 925 (11th Cir. 2023) ("[T]here is no violation of the private nondelegation doctrine where the private entity functions subordinate to an agency, and the agency has authority and surveillance over the entity."). *Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 821 F.3d 19 (D.C. Cir. 2016) is distinguishable on these grounds as well; there the agency was absolutely precluded from overruling the decision of a private arbitral panel as to a matter within its regulatory authority, and there is nothing remotely like that here.

Here the safety and efficiency of pilotage is subject to pervasive oversight and control by the Coast Guard. The Coast Guard approves the Associations' instructors who may "provide training to those pilots that are in training to be registered pilots." 46 C.F.R. § 401.211(c). The agency also approves the Association's training plan. JA-132. And here, all of the Association's decisions here were overseen by the Coast

27

Guard, which determined that none of those decisions compromised the safety and efficiency of pilotage, and in fact went further to find that had the Association recommended Hight for registration it would have overruled that recommendation on safety grounds. Hight's response to all of this is the rote and unsupported *ipse dixit* assertion that the Coast Guard acted in a "pretextual" or "rubber stamp" fashion. *See, e.g.*, App. Br. at 50-51. The record of course tells a different story.

Hight's assertion that this gives the Association some kind of illegitimate gatekeeping role likewise ignores the fact that the Coast Guard retained the authority to make the final registration decision and made its own determination on this issue. It also ignores the many situations in which courts have upheld arrangements granting private actors authority going far beyond the role the Association played here. For example, state courts have permitted the American Bar Association to approve law schools from which applicants to the bar have to have graduated to be admitted to the bar, finding that this is not an unconstitutional delegation of power to the "wholly private" Association. *See, e.g., Potter v. New Jersey Supreme Ct.*, 403 F. Supp. 1036, 1037 (D.N.J. 1975), *aff'd*, 546 F.2d 418 (3d Cir. 1976) (three-judge court) (noting "an abundant body of authority upholding the requirement in various jurisdictions that candidates for admission to a state bar hold a law degree from an institution approved by the American Bar Association") (citing cases); *Potter* cited and relied on *Kotch*, which found that pilotage was "a unique institution

and must be judged as such" and upheld Louisiana's requirement that the governor could appoint a pilot only if the applicant both possessed all the statutory qualifications *and* served a six-month apprenticeship under Louisiana officer pilots. 330 U.S. at 557, 564. The Supreme Court upheld this system even accepting the plaintiffs' allegation that "the incumbent pilots, having unfettered discretion under the law in the selection of apprentices, had selected with occasional exception, only the relatives and friends of incumbents." *Id.* at 555.

The Supreme Court noted in *Kotch* that the "history and practice of pilotage demonstrate that, although inextricably geared to a complex commercial economy, it is also a highly personalized calling" and refused "in effect, to say that Louisiana is without constitutional authority to conclude that apprenticeship under persons specially interested in a pilot's future is the best way to fit him for duty as a pilot officer in the service of the State." *Id.* at 558–59. The Supreme Court noted that this deference to the existing pilots' selection of new pilots did not encompass "hostility to his particular race, religion, beliefs," or other reasons unrelated to the regulated activities, *id.* at 556, but Hight has made no such allegation here. *Kotch* has never been questioned or overruled, and Hight suggests no basis for this Court to do so now.

In *Carter v. Carter Coal*, the Supreme Court was influenced by the fact that the private party exercising governmental power was economically self-interested.

Since *Carter*, however, the Supreme Court has permitted an economically self-interested entity to play a role in the regulatory process as long as a neutral government entity also exercises authority in the matter.[4]  And *Kotch*, decided only a dozen years after *Carter*, upheld a pilot selection system that depended on private decisions rife with self-interest without suggesting in any way that *Carter* precluded this result.  In any event, here the Coast Guard retains, and exercises, the authority to review the Association's training program and its recommendations regarding pilot registration in order to assure their consistency with its duty to assure safe and efficient pilotage.

Hight has in any event failed to show that the Association had any economic self-interest in declining to recommend the Hight.  As set out above, the Association's rates and the target compensation of its pilots are established by the Coast Guard based on projected vessel traffic and was previously tied to the compensation benchmark of AMOU officers— and has never been tied to whether

---

[4] *See United States v. Rock Royal Co-op.*, 307 U.S. 533, 547–48 (1939) (upholding scheme in which milk marketing agreement does not take effect unless accepted by at least two-thirds of the producers in the marketing area); *Currin v. Wallace*, 306 U.S. 1, 6 (1939) (upholding a scheme in which standards could not be applied to the tobacco market without approval of two-thirds of the producers in the market); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 396–98 (1940) (upholding a statute directing industry groups to propose minimum prices and related standards for coal to a federal agency, which could approve, disapprove, or modify the proposals to assure consistency with statutory criteria).

an individual applicant pilot is or is not recommended for full membership in the Association.  This is not a case where a guild or other legal monopoly can exclude applicants to restrict the supply of service providers and take advantage of the shortage to raise prices or rates.  Rates are set by the Coast Guard, not the Association.

### III.    HIGHT'S FIRST AMENDMENT CHALLENGE IS ALSO MERITLESS.

In *Menkes v. DHS*, this Court considered the same First Amendment question that Hight poses here: "whether requiring membership in the SLSPA as a condition of being dispatched by the Association as a District One pilot violated [an applicant's] First Amendment rights."  *Menkes*, 637 F.3d at 334.  This Court ruled that Menkes' claim was precluded by a prior Second Circuit decision that had already addressed the identical First Amendment issue.  *Id.* (citing *Menkes v. St. Lawrence Seaway Pilots' Ass'n,* 269 F. App'x 54, 56 (2d Cir. 2008)).  That Second Circuit decision was in turn based on the Supreme Court's decision in *Keller v. State Bar of California*, 496 U.S. 1, (1990), which upheld mandatory membership in professional associations as a condition of employment.  *Id.* (citing *Menkes v. St. Lawrence Seaway Pilots' Ass'n,* 269 F. App'x 54, 56 (2d Cir. 2008), citing *Keller*, 496 U.S. at 8).  Because Menkes could not offer a reason why the Second Circuit decision should not apply, the principle of preclusion barred him from raising the argument again.

Turning to the merits of the claim, the Court held that even if the First Amendment argument were not precluded, it still lacked merit. *Menkes*, 637 F.3d at 334. In addition to relying on *Keller*, this Court weighed the interests on both sides and held that the government's interest in the safe and efficient regulation of pilotage on the Great Lakes justified any limitation on Menkes' associational rights. *Id*. at 334–35.

Recognizing that this case falls squarely within the facts of *Menkes*, Hight seeks to attack this precedent on two grounds: first, he argues that the Court's First Amendment holding is nonbinding dictum; second, he argues that *Menkes* should be is no longer "good law," based on the Supreme Court's decision in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018). Neither rationale justifies disregarding this precedent.

As to the first argument, the Supreme Court has made clear that "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949). In other words, "where there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, 'the ruling on neither is obiter, but each is the judgment of the court, and of equal validity with the other.'" *Dooling v. Overholser*, 243 F.2d 825, 828 (D.C. Cir. 1957) (quoting *United States v. Title Ins. Trust Co.*, 265 U.S. 472, 486 (1924)). Thus, the alternative holding in *Menkes* was not dicta. It was an

integral part of the Court's dual rationale. Each holding independently supported the judgment, and as such, both constitute binding precedents.

As to Hight's invitation to overrule *Menkes*, this panel, of course, "does not have the authority to overrule another three-judge panel of the court." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996). Nor has that decision been "eviscerated" by subsequent Supreme Court decisions. *See Dellums v. United States N.R.C.*, 863 F.2d 968, 978 n. 11 (D.C. Cir. 1988) ("a circuit precedent eviscerated by subsequent Supreme Court cases is no longer binding on a court of appeals.").

Although *Abood* has been overruled by *Janus*, the ruling in *Menkes*, which was also based on *Keller*, remains intact because *Keller* remains good law, as recognized by this Court's sister circuits. *Menkes,* 637 F.3d at 335 (quoting *Keller*, 496 U.S. at 13–14). *Keller* held "that 'compelled association' of [a] state bar was justified by the 'State's interest in regulating the legal profession and improving the quality of legal services.'" As several courts have concluded, the Supreme Court's decision in *Keller* remains good law, and has not been abrogated by *Janus* or overruled by implication. *See* n. 1, *supra*.

Nor does *Janus* itself support Hight's arguments. *Janus* does not discuss pilotage, the Pilotage Act, or private associations. The majority opinion in *Janus* did not discuss *Keller* or respond to the dissent's citation to *Keller. See Janus,* 138 S. Ct. at 2498 & n.5 (Kagan, J. dissenting). It did not discuss *Kotch*. Indeed, the only

mention of professional associations is in the dissent, and again, the majority opinion does not address the issue. *See id.* at 2495 & n.3 (noting that "the First Amendment 'simply do[es] not guarantee that one's hard-earned dollars will never be spent on speech one disapproves of'") (citation omitted). *Janus* prohibited assessing fees on a member of a public employee collective bargaining unit to subsidize union collective bargaining and grievance activities that he claimed to disagree with. But here Hight is not a member of the Association (which is a private entity) and has not been assessed anything.

*Menkes* binds this Court, and the Court has no authority to overrule it or refuse to follow it. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We reaffirm that '[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions'") (quoting *Rodriguez de Quijas v. Shearson/Amer. Express, Inc.*, 490 U.S. 477, 484 (1989)); *Maxwell v. Snow,* 409 F.3d 354, 358 (D.C. Cir. 2005) (same). Hight's First Amendment claim should be rejected.

## IV.    AMICIS' REHASH OF HIGHT'S CONSTITUTIONAL CLAIMS IS BASED ON PERVASIVE MISUNDERSTANDING OF THE PILOTAGE SYSTEM.

The amici States of West Virginia, Arkansas, Idaho, Iowa, Kansas, Mississippi, Missouri, Montana, South Carolina, and Utah—some landlocked and

none with any direct relationship to the Great Lakes region—have entered the fray with an amicus brief advancing the same nondelegation arguments that Hight raises, and introducing new and inapposite federalism arguments that Hight does not. Their brief suffers from a series of misconceptions about the regulatory structure of pilotage on the Great Lakes, as well as the specific facts and legal framework of this case.

Amici first posit that Hight's exclusion from the ranks of registered pilots injures competition, on the theory that the Association and Hight's "future competitors" have a vested interest in limiting access to the profession. Amici Br. at 5, 17. This argument misconstrues the federal pilotage system at a very basic level. As the Second Circuit recognized in dismissing competition-related claims brought by a disaffected former President of the Association, the regulatory framework established by the Coast Guard explicitly governs pilot numbers, rates, and operational standards. *See Menkes,* 269 F. App'x at 55 (citing 46 C.F.R. §§ 401.220; 46 C.F.R. § 401.405). The Coast Guard sets both the number of registered pilots allowed to operate (46 C.F.R. § 401.220) and the rates those pilots can charge (46 C.F.R. § 401.405). Thus, the Coast Guard, not the Association, ultimately controls critical market factors within the pilotage system; the Association has no ability or incentive to arbitrarily restrict the number of pilots and thereby drive up rates.

Amici's citation to *North Carolina State Board of Dental Examiners*, in which the Supreme Court held that a state licensing board was not immune from federal antitrust actions, thus misses the point.  *See* Amici Br. at 3 (citing *N.C. State Bd. of Dental Exam'rs v. FTC*, 574 U.S. 494 (2015)).  In that case a state dental board regulated the entry of the board members' competitors through a licensing process.  That is not the case here: entry and rates are set by the Coast Guard not the Association.  And of course the Association is not asking for immunity from suit; it is asking that the dismissal of meritless claims be affirmed.

In the same vein, amici entirely misconstrue the holding and discussion in *American Great Lakes Ports Association*, a case that undersigned counsel litigated for the pilots.  That case underscores the Coast Guard's exclusive control over the number of pilots and directly negates the idea that pilots themselves can manipulate market forces.  *See Am. Great Lakes Ports Ass'n*, 962 F.3d at 517.  As this Court explained, the Coast Guard sets rates based on actual demand for shipping services based on the number of bridge hours in past years, not on the number of pilots or any contrived "perceived demand."  *Cf.* Amici Br. at 18.  Amici's argument lacks any factual basis in the established regulatory framework.

Amici also raise misplaced federalism concerns, arguing that the federal government has violated the balance of power between federal and state sovereignty by "seizing control" over Great Lakes pilotage.  Amici Br. at 1.  This argument

36

fundamentally misunderstands the well-established principle of federal supremacy in matters of international commerce and navigation, and maritime law in particular. *See, e.g*, *The Lottawanna*, 88 U.S. 558, 575 (1874) (noting that because maritime law is strongly tied to both interstate and foreign commerce there is a need for it to "operat[e] uniformly in the whole country," rather than being "under the disposal and regulation of the several States").

The Great Lakes and the St. Lawrence Seaway, as shared waterways with Canada, transcend state borders.  Ensuring safe and efficient navigation in this critical international zone falls squarely within the traditional role of the federal government, acting to protect U.S. interests and foster smooth diplomatic relations with a sovereign neighbor.  The federal government maintains exclusive authority in this area of international relations, which also implicates various international treaties on maritime safety and seamen's welfare.  That is why Great Lakes pilotage is federally regulated and subject to international agreements with Canada "subject to the concurrence of the Secretary of State."  *See* 46 U.S.C. § 9305.  There is no federalism issue in this case, and none had even been suggested until the misguided amicus brief was filed.

Amici's nondelegation argument posits that the Coast Guard has improperly relinquished its authority to the Association.  This argument echoes Hight's and suffers from the same defect: it ignores the Coast Guard's extensive oversight and

37

its specific review of Hight's case.  The Coast Guard retains pervasive regulatory power over pilotage, ensuring both safety and economic efficiency.  Consistent with its directives from Congress, barring a clear threat to safety or efficiency, the Coast Guard respects the expertise of the pilot association in evaluating individual pilots.  The Coast Guard's detailed explanation of why Captain Hight's registration would present a safety risk was well within its mandate and expertise.  *See supra* pp. 20–25.[5]

The states' tour through a collection of delegation cases, many decades old, and various law review articles is thus beside the point.  The Coast Guard did not delegate any of its authority to regulate the safety and efficiency of pilotage.  Indeed, the Coast Guard stated that its safety authority would have required it to overturn a positive recommendation from the Association, which in the Coast Guard's view would have presented a safety risk.  *See supra.* p. 5.  That decision is squarely within the Coast Guard's expertise and discretion, and implicates none of the delegation or federalism concerns the states purport to be concerned about.

---

[5] Amici's quotation of instances where agency personnel stated they had limited time for Hight's incessant badgering (Amicus Br. at 14–15) in no way supports their position.  To the extent that the states parrot Capt. Hight's assertions that the Coast Guard did not properly consider the matter because it was overworked or somehow in the pocket of the Association, the record amply disproves that claim, as noted above and as well presented in the district court's opinion.

The states' brief also ignores relevant precedent regarding pilotage. As the Supreme Court acknowledged in *Kotch*, the unique demands of pilotage require specialized local knowledge, close-knit working relationships, and rigorous oversight for maintaining safety. The Court noted that giving existing pilots a role in selecting new members reflected a long-standing tradition with practical justifications. *See* 330 U.S. at 563. Amici's arguments betray a fundamental misunderstanding of the regulatory structure governing Great Lakes pilotage, the nature of the industry, and relevant Supreme Court precedent, and are not supported by any relevant legal precedent in any event.

## CONCLUSION

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully submitted,

/s/ John Longstreth
John Longstreth
Mark H. Ruge
Tre A. Holloway
K&L GATES LLP
1601 K STREET, NW
Washington, DC 20006-1600
202-778-9000
john.longstreth@klgates.com
mark.ruge@klgates.com
tre.holloway@klgates.com

*Counsel for Defendant-Appellee St Lawrence Seaway Pilots Ass'n*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limitation of D.C. Cir. Rule 32(e)(2) because this brief contains 8,627 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: May 6, 2024                              /s/ John Longstreth
                                                         John Longstreth

**CERTIFICATE OF SERVICE**

I certify that on May , 2024, I filed the foregoing Brief for Intervenor-Appellee with the Clerk of the United States Court of Appeals for the D.C. Circuit via the CM/ECF system, which will notify all participants in the case who are registered CM/ECF users.

Dated: May 6, 2024                                    /s/ John Longstreth_____
                                                     John Longstreth